# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3326 | **DATE** | July 30, 2003 |
| **CASE TITLE** | Classic Amenities v. Verbeke | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion of all defendants for summary judgment on the complaint [ ] is allowed. There appears to be a third-party claim by Verbeke against Classic and Gerald B. Miller. A status conference on the third-party claim will be held on September 3, 2003 at 10:30 a.m. ENTER MEMORANDUM OPINION.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices MAILED by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to _____ | | date mailed notice | |
| KAM | courtroom deputy's initials | 03 JUL 31 PM 4:31 | KAM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

(Reserved for use by the Court)

00-3326.013                                                    July 30, 2003

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CLASSIC AMENITIES, INC., )
)
Plaintiff, )
)
v. ) No. 00 C 3326
)
EDMOND VERBEKE, EMPIRE )
AMENITIES, INC., and READY )
CARE INDUSTRIES, )
)
Defendants. )

DOCKETED

AUG 1 2003

## MEMORANDUM OPINION AND ORDER

The court has under consideration the defendants' motion for summary judgment. For the reasons explained in this opinion, the motion will be granted.

### Factual Background

The parties in this case are competitors in the business of providing guest amenities to hotels. The "amenities" consist of packages of soaps, shampoos and similar items use in guest rooms. Plaintiff, Classic Amenities, Inc. ("Classic"), is a Delaware corporation with its principal place of business in Chicago, Illinois. The defendant Edmond Verbeke is an individual domiciled in New York. He has sold hotel and guest amenities for various companies since 1986. Classic was formed in 1996. Verbeke came to work for the company in 1996 and was made a 25 percent shareholder. He was given the title of President. The other 75 percent of the

shares were owned by Gerald A. Miller. The two directors of the company at the outset were Verbeke and Stan Rozewski, a comptroller who worked for another company owned by Miller. Verbeke and Rozewski never held a meeting of the board of directors. Verbeke received no compensation as a director and performed no duties as a director of Classic. Verbeke was never given written notice or minutes of directors' meetings. Verbeke had no written employment agreement with Classic and did not execute any restrictive covenant or agreement not to compete with Classic.

Verbeke's duties with Classic consisted of selling amenities to hotel customers. In fact, he was the only full-time sales person. He worked out of his home in South Salem, New York. Many of the customers he serviced at Classic had been his customers at the companies he worked for prior to 1996.

Verbeke had three long distance telephone lines and three local lines at his home, all listed in both his name and the name of Classic Amenities. The phones were used for business purposes as well as for the Verbekes' personal purposes. Pursuant to Verbeke's arrangements with the telephone company, the bills were sent to him in his name, and he would pay the bills by personal check. He would then obtain reimbursement from Classic for the business portion of the bills.

In March of 2000, Verbeke decided to leave Classic. On March 6, 2000, he sent Gerald Miller a letter, the first paragraph of

which stated that

> It is with a great deal of regret that I inform you of my resignation from Classic Amenities, effective March 6, 2000. It has become increasingly clear to me that you and I no longer share a vision with regard to Classic's daily operations and future growth, and I truly believe that parting company now is the best course of action for all involved.

The letter went on to advise that Verbeke had cancelled the long distance phone lines and had requested the phone company to change the listing of the three local telephone numbers to his name alone, effective March 6, 2000.

Before resigning from Classic, Verbeke contacted Ready Care Industries, a supplier of products to Classics, to discuss a possible employment relationship. There is no evidence that Verbeke solicited any business on behalf of Ready Care before March 6, 2000, the date of his resignation from Classic. He has denied under oath that he did so. After March 6, 2000, Verbeke took a sales position with Ready Care Industries, selling guest amenities to many of the same customers he had serviced for Classic. When Verbeke left Classic, over $675,000 worth of purchase orders he had obtained were still on the books with Classic.

The first purchase order Verbeke obtained for Ready Care d/b/a Empire Amenities was on March 21, 2000.

Verbeke continues to be employed as a sales person by Ready Care Industries (also known as Empire Amenities, Inc. and Ready Razor, Inc. The difference in names does not appear to be

material).

## The Proceedings in this Case

Classic filed a four-count complaint based on diversity of citizenship, charging Verbeke, Empire Amenities, Inc. and Ready Care Industries (hereinafter "Ready Care") with various misconduct in connection with Verbeke's change of employment. The complaint charges Verbeke with breaches of his alleged fiduciary duties as an shareholder, officer and director of Classic. The defendant Ready Care is charged with aiding and abetting Verbeke's breaches of fiduciary duty. The complaint seeks an injunction restraining all defendants from doing business with Classic customers and also seeks a constructive trust on proceeds of defendants' sales to Classic customers.

The defendants have moved for summary judgment on all counts of the complaint, arguing that there is no evidence of any breach of fiduciary duty by Verbeke and therefore no evidence of any wrongdoing by the other defendants.[1] The parties have submitted numerous briefs and a large volume of evidentiary materials in connection with the summary judgment motion. Despite the mass of paper, the issues turn out to be relatively simple. They all

---

[1] Ready Care argues that under Illinois law there is no separate tort of aiding and abetting. As pointed out in Eastern Trading Co. v. Refco, Inc., 229 F.3d 617, 623 (7th Cir. 2000), this is true. It appears, however, that defendants could be held liable, not for a separate tort, but for the tort itself on an aiding and abetting theory. Id. at 623-24. The distinction does not seem to be important in this case, however, because of our holding is that there is no evidence to establish any breach of fiduciary duty by Verbeke.

concern whether Verbeke occupied any position with Classic that imposed any continuing fiduciary duty upon him after he left Classic's employ and whether he violated any fiduciary duty, either before or after he left.

We will discuss separately each of the fiduciary duties asserted by Classic.

### Duty As an Officer (or Employee)

Clearly, if Verbeke had solicited any business for himself or for a prospective employer while he was still in the employ of Classic, that would have been a violation of his duty of loyalty to Classic. But there is no evidence that Verbeke did any such thing. What he did do was to explore an opportunity with Ready Care and make preliminary plans to join Ready Care after he left Classic. This was not a violation of any duty he owed Classic. As stated in Lawter International, Inc. v. Carroll, 451 N.E.2d 1338, 1349 (Ill. App. Ct. 1983) (citations omitted) (emphasis added):

> It is recognized that an employee, <u>absent a restrictive contractual provision</u>, has a right to enter into competition with the former employer upon leaving such employ. Indeed, an employee may legitimately go so far as to form a rival corporation and outfit it for business while still employed by the prospective competitor. An employee is held accountable for breaching his fiduciary duty to his employer only when he goes beyond such preliminary competitive activities and commences business as a rival concern while still employed.

Another way an employee or officer could violate a fiduciary duty would be to misuse confidential information of a former

employer. However, there is no evidence that Verbeke did this. He was very familiar with the business long before he joined Classic. Classic had no information that was not available from public sources or from the customers themselves. There were no secret customer lists and no confidential customer information.

Neither is there any evidence that Verbeke or Ready Care made any misrepresentations to any customers in order to divert their business from Classic. They made it clear that Verbeke had left Classic and was now selling for a new company. Classic makes much of Verbeke's continued use of the home telephone numbers he had used while working for Classic, but, as defendants point out, there is no evidence that any customer was misled into ordering from Ready Care when it thought it was dealing with Classic. Verbeke changed the listing with the telephone company, and, in the absence of any evidence of prejudice to Classic, we see no basis for holding that he should have gone so far as to have the local telephone lines disconnected. Immediately after Verbeke's resignation, Classic switched its toll-free number from Verbeke's home to its offices in Chicago. Classic still maintains that number, and, in Verbeke's experience, "customers generally use the toll-free number, instead of paying long distance charges to place an order or contact a company regarding a custom amenities program." (Defendants' Response to Classic Amenities, Inc.'s Supplemental Memorandum Pursuant to the Court's June 16, 2003

Order, Ex. 1, Affidavit of Edmond Verbeke, at ¶¶ 8, 11, 13.) There is no contrary evidence.

Classic complains of the use of certain of its mechanicals and artwork for the purpose of generating orders for Ready Care. However, these materials were not in Verbeke's possession, but were in the possession of third-party suppliers. Defendants are correct that the use of these items by third-party suppliers would not constitute a breach of fiduciary duty by Verbeke.

### Duty as a Shareholder

We agree with defendants that there was nothing about Verbeke's status as a minority shareholder in the corporation that created any duty on his part to not compete with the corporation. Had he competed unfairly, or had he abused confidential information that he had somehow obtained by virtue of being a shareholder, that would be a different matter. But liability in that kind of situation would be predicated on his misuse of information, not on his mere act of competing.

There is no evidence that Verbeke did anything as a shareholder that would create liability on his part.

### Duty as a Director

Classic's strongest argument is that Verbeke's resignation letter of March 6, 2000, did not say he was resigning as a director and that his status as a director therefore continued. This, according to Classic, barred Verbeke from competing with Classic.

Verbeke's response to this argument is that, while his letter of March 6, 2000 did not specifically mention the positions from which he was resigning (it did not mention that he was resigning as President), the clear implication was that he was terminating all ties with Classic. We think that, in the circumstances, this is true. Classic gave no indication that it regarded Verbeke as a director after March 6, and, indeed, it would hardly have made sense for the directorship to continue. Certainly there is no evidence that Verbeke thought it did.

Assuming, however, that something continued after March 6, what continued could be no more than what had existed before March 6. That brings us to the case of Voss Engineering, Inc. v. Voss Industries, Inc., 481 N.E.2d 63 (Ill. App. Ct. 1985), cited by both sides in their briefs. In disputes of this kind, it is often impossible to find a case directly on point, but Voss comes very close. Voss Engineering, Inc. was in the business of manufacturing and selling shock and vibration absorption products. The majority shareholder "and functional 'head' of Voss Engineering" was Robert J. Voss, who served as president until his son, James R. Voss, was elected to serve in Robert's place. Id. at 64. James was also made a director of the corporation.

"In September 1980, Robert Voss advised his son James that he was to call his mother in the hospital. When James refused, Robert informed him that he was no longer employed at Voss Engineering."

Robert gave James until the end of October "to make up with his mother." James did not reconcile with either his mother or his father and,

> subsequent to his conditional termination in September 1980, he never returned to Voss Engineering. He performed no directorial duties, attended no corporate meetings, and did not act for plaintiff corporation in any capacity. James submitted his formal resignation as director of plaintiff corporation in April 1981, at the time plaintiff brought this action, <u>having assumed that all his connections with Voss Engineering, including that of director, had ended in September 1980</u>.

Id. at 65 (emphasis added). The reason Voss Engineering, Inc. brought the lawsuit against James is that after his termination in September, James had started up a competing corporation.

The court held that two former employees of plaintiff had not breached any fiduciary duties to plaintiff by participating with James Voss in the planning and formation of the new corporation. See id. Turning to James Voss, the court stated what plaintiff's contention was:

> Plaintiff also contends that James Voss breached his fiduciary duty to Voss Engineering by operating a competing corporation while still a director of plaintiff. This contention is predicated on the fact that James did not officially resign as director until April 1981, some seven months after his termination from plaintiff; and, that during that period between termination and formal resignation, James made use of some company credit cards and a company car.

Id. at 66. The court noted that James "never performed any directorial duties, attended any corporate meetings, or acted for plaintiff corporation in any capacity subsequent to his

termination." Id. at 67. Further,

> James testified that he believed his directorship had been terminated along with his position as manager and officer of plaintiff corporation. We too find that Robert Voss' conditional termination of his son served not only to fire him from his position as officer and manager <u>but also to effectively remove him from his role as corporate director</u>. Incidental to his power to elect, Robert Voss, unencumbered by statute, had the power to remove. His actions in regard to James Voss were consistent with the exercise of this power. The submission of James Voss' formal resignation some seven months later does not, by its mere form, negate the substance of the removal.

Id. (emphasis added).

The court came to the following conclusion, which we believe is applicable to Verbeke's situation in this case:

> Because James Voss was effectively removed in September 1980, prior to the time he began operating a competing corporation, he owed no fiduciary duty to plaintiff. Accordingly, one cannot breach a duty one does not owe.

Id.

Like James Voss, Verbeke performed no directorial duties whatsoever after his resignation letter of March 6, 2000. In fact, he had no directorial duties, and certainly performed none, even prior to March 6, 2000, and it could be argued that the rationale of the Voss case is just as applicable to the period before March 6, 2000 as it is to the period after that date. In any event, Classic's actions after March 6, 2000 are inconsistent with its argument that Verbeke continued to be a director after that date: it had no contact whatsoever with him in regard to any role it thought he had as a director --- such as attending meetings or

making decisions of any kind --- and, on December 21, 2000, Gerald A. Miller, as 75 percent shareholder of Classic, elected himself sole director of the corporation, without any notice to Verbeke.

There is no evidence from which it could be found that Verbeke had any fiduciary duty as a director after March 6, 2000.

### Conclusion

There is no genuine issue of fact as to whether the defendant Edmond Verbeke has breached any fiduciary duty to the plaintiff Classic Amenities, Inc. We agree with Verbeke that what Classic seeks to do here, in reality, is to enforce a non-compete agreement that never existed. Classic had no such agreement with Verbeke, and, as a matter of law, Verbeke was free to compete after his resignation.

The motion of all defendants for summary judgment on the complaint is allowed.[2]

Date:   July 30, 2003

ENTER:  _____
        John F. Grady, United States District Judge

---

[2] There is a counterclaim and third-party claim by Verbeke against Classic and Gerald A. Miller. A status conference on the counterclaim and third-party claim will be held on September 3, 2003 at 10:30 a.m.